CASE 15.—PROCEEDING BY A. F. ROGERS AND OTHERS
ASKING ADVICE OF THE COURT AS TO THE DIS-
POSITION OF CERTAIN TRUST PROPERTY, IN
WHICH ROSS TAYLOR AND OTHERS INTER-
VENED WITH AN ANSWER AND CROSS-PETITION
AGAINST THE PLAINTIFFS.—October 28.

# Taylor, &c., v. Rogers, &c.

Appeal from Todd Circuit Court.

W. P. Sandidge, Circuit Judge.

From an order sustaining a demurrer to the peti-
tion of interveners, they appeal.—Reversed.

1. Trusts—Creation and Existence—Duration.—Persons donated
money and property to establish a training school of a
designated character, different from a public school. A deed
conveying real estate provided that, on failure to maintain
a school thereon of the described character, the land should
be conveyed to trustees, to be used for the purposes for
which it was deeded. The school was a failure and could
not be conducted. Held, that the grantor in the deed con-
veyed the land in trust for the purposes expressed therein,
and the trust failed.

2. Trusts—Termination—Effect.—An owner conveyed land for a
school of a designated character. A building was erected
thereon for such purpose with funds donated by others. The
trust failed, because the school could not be conducted. Held,
that the property must be sold and the proceeds given to
the heirs of the owner of the land in the proportion that the
value of the land at the time of its donation bore to all the
sums contributed, including the value of the land, and the
interest of the other donors must be in the proportion that
the sums contributed by them bear to all the sums contributed,
including the value of the land.

3. Trusts — Termination — Disposition of Property—Parties.—In
an action by trustees of property donated for a specified

Taylor, &c. v. Rogers, &c.

purpose for advice as to the disposition of the property on the termination of the trust, the donors or their heirs should be made parties, or, if they are numerous, some should be permitted to sue or defend for all, and the court then order the sale of the property and divide the proceeds among the donors or their heirs.

S. WALTON FORGY for appellants.

### POINTS AND AUTHORITIES.

The following propositions are discussed and the following authorities cited.

1. The contract and deed must be construed and read together. (110 Ky., 33; 101 Ky., 441; 5 Lawson's Rights Rem. & Prac., 2315; 33 Ky. Law Rep., 346.)

2. Where property is donated to a charity, or a certain charitable object and the object fails or is abandoned, the property reverts to the donor or his heirs. (4 Bush, 234; 5 Bush, 330; 20 Ky. Law Rep., 391; 70 Cal., 326; 16 Barb (N. Y.), 107; 18 Ohio, 221; 23 Pa., 495; 110 Pa., 496.)

2. This is unlike the Fuqua case cited in 22 Ky. Law Reporter, 744, for the reasons stated in the brief.

4. Section 323 of the Kentucky Statutes has no application for the reasons stated in the brief. (Ky. Const., 187; 4 Bush, 234; 5 Bush, 330; 20 Ky. Law Rep., 391.)

5. Section 1606. Kentucky Statutes has no application for the reasons stated in the brief.

SELDEN Y. TRIMBLE for appellee.

PERKINS & TRIMBLE of counsel.

### AUTHORITIES CITED.

Goss v. Houchins, 6 Ky. Law Rep., 442; Morrison v. Coghill, 2 Ky., (Ky. Dec.) 322; Carroll County Academy v. The Gallatin Academy, 20 Ky. Law Rep., 824; Trustees Presbyterian Church v. Alexander, 20 Ky. Law Rep., 391; Fuqua's Heirs, v. Trustees Hopkins Academy, 22 Ky. Law Rep., 744; Spalding v. St. Joseph School, 21 Ky. Law Rep., 1107; Kentucky Statutes, 4439a, 4484.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

In the year 1892, certain citizens of the town of Guthrie, Todd county, Ky., conceived the design of organizing a training school for the community. To that end a public meeting was held, and about $10,000 subscribed for the erection of a school building. At that time the trustees of Bethel College were operating a successful school at Russellville, in the adjoining county of Logan, and it was thought prudent to have the Guthrie school conducted in conjunction with Bethel College and under the supervision of its officers. Upon the adjournment of the public meeting, and in pursuance of the plans then projected, a written contract was made and entered into by a committee of the citizens of Guthrie appointed at that meeting, of the one part, and the trustees of Bethel College, of the other part. This contract is as follows:

"This contract, made and entered into by and between A. F. Rogers, D. B. Smith, W. M. Ware, T. M. Mimms, and R. Y. Johnson, a committee appointed by a meeting of citizens of Guthrie, Todd county, Ky., on the 10th day of March, 1892, which said meeting was composed of persons who had subscribed money and property for the purpose of establishing a training school at Guthrie, parties of the first part, and the trustees of Bethel College, of Russellville, Ky., parties of the second part, witnesseth:

"That the said parties, representing said subscribers, for and in consideration of the agreement this day and hereby entered into on the part of the second parties to establish and perpetually maintain a training school at Guthrie of the character hereafter defined, have given, donated, and granted, and by these

presents do give, donate, and grant, to the second parties a tract of land lying near the said town of Guthrie, which is to be hereafter conveyed to said Bethel College by the present owner thereof, said tract to consist of about twenty (20) acres, and also money and other property which has already been or may hereafter be subscribed for that purpose. The second parties are to have and hold all of said land, money, and other property in trust for the use and purposes hereinafter stated; that is to say: The trustees of Bethel College hereby bind and obligate themselves and said college to apply the funds so raised and actually paid over to them by said first parties, and to devote the land and other property so received by them from said first parties or from any other sources for that purpose, to the establishment and maintenance of a training school at Guthrie, to be located upon said tract of land. The style, character, and cost of the building or buildings to be erected for the purpose to be determined by the first parties, and the said building or buildings are to be erected by a joint committee, one-half of which is to be appointed by the first and one-half by the second parties; but in no event are said improvements, including furnishing and complete equipment of said building or buildings for school purposes, to cost more than is actually paid to the second parties by the first parties. The second parties obligate themselves and the said college to perpetually maintain the school to be thus established, provided the same can be done by the revenue derived from tuition fees, the common school funds which may be produced for the use thereof, and any endowment which in the future may be secured for it; but in no event is Bethel College to expend any part of its endowment revenues or property in the maintenance

or operation of said training school. The curriculum or course of study to be used in said school is to be prescribed by the second parties; but it is agreed that such curriculum or course of study shall be adequate to prepare white pupils of said school for entry into the sophomore class of the colleges in this section of the United States. It is agreed that female pupils are to be admitted to all the privileges of said curriculum.

"The first parties agree to surrender the absolute control of the school to said second parties, and the second parties are to have the right, and it is hereby made their duty, to choose the corps of instructors, and to maintain, keep, or discharge the same at pleasure, without any interference on the part of the first parties. The second parties hereby bind and obligate themselves to put on foot and earnestly prosecute a move to have the Bethel Association raise from within and without its own membership an endowment for said school, and they hereby obligate themselves to devote the whole of such endowment, when procured and received by them, to the maintenance of said training school. If, after the cost of erecting the proposed building or buildings and the cost of equipping them for school use, 10 per cent of the gross receipts from tuition fees, incidental fees, and income from endowment shall be set apart for the purpose of paying cost of repairs, insurance, and all legal demands against the school, any surplus shall remain, the second parties are to invest such surplus in good interest-bearing securities for the sole benefit of the school. It is further stipulated that, in the event of a failure on the part of Bethel College to maintain a good school at Guthrie of a grade and character herein outlined, its board of trustees are to reconvey to a board

of trustees to be selected in the first instance by the donors, or to such party or parties as the donors may designate, all of the real estate and unexpended money on hand, or other property which may be conveyed to the second party under this contract for the building and maintenance of a training school at Guthrie, and to surrender all control over said institution. The board of trustees at Guthrie are empowered to visit the school, to see that the insurance is kept alive and the buildings and grounds kept in repair, and report at least once a year, the 1st of June, to the trustees of Bethel College and the donors.

"In testimony of all, witness the hands and seals of parties hereto, this 14th day of March, A. D., 1892, executed in duplicate.

"A. F. Rogers,
"D. B. Smith,
"W. M. Ware,
"Thos. S. Mimms,
"R. Y. Johnson, Committee.
"Board of Trustees of Bethel College,
"By B. F. Kidd, President.
"A. C. Dodgen, Secretary."

Thereafter, on April 9, 1892, John F. Taylor executed, acknowledged, and delivered to the trustees of Bethel College a deed, conveying to them a tract of land, consisting of about 20 acres, situated in Todd county, Ky. This deed is as follows:

"This indenture, made and entered into by John F. Taylor, of Todd county, Ky., of the first part, and the trustees of Bethel College of Russellville, Logan county, Ky., of the second part, witnesseth:

"That for and in consideration of the desire of the party of the first part to organize and maintain a good school for the education of the white male and female

children of Guthrie and vicinity, and any others that may desire to avail themselves of the benefit of said school when organized, and for the further considera- tion that the party of the second part is to erect buildings, improve the grounds, and furnish a curricu- lum of studies and teachers, according to contract entered into between the party of the second part and a committee of citizens of Todd county, Ky., consist- ing of A. F. Rogers, D. B. Smith, W. M. Ware, T. S. Mimms, and R. Y. Johnson, on March 14, 1892, the party of the first part by these presents hereby con- veys and deeds to the party of the second part a tract of land situated in Todd county, Ky., near Guthrie, on the Louisville & Nashville railroad, and bounded as follows: Beginning at a stone opposite north side of the street in said John F. Taylor's land, west boundary line; then N. 51° E., 86 poles, to a stake in the field; thence S 47° E., 27 4-5 poles, to a point in the north boundary line of the railroad land; thence S 44½° W., 22 1-5 poles, with railroad land, to a stake; thence S. 46° E., 3 4-5 poles, to a corner of railroad land then S 44½° W., 39 poles, to a stake, corner to said railroad land; thence S. 43½° E., 4 poles, to a stake 33 feet from the center of the railroad track; thence S. 50¾° W., 12 poles, to a stake; thence S. 79½° W., 20 poles, to a stake; thence N. 40° W., 33½ poles, to the beginning—containing 20 acres and 10 poles, be the same more or less.

"It is hereby stipulated that the party of the first part makes this deed to the party of the second part with the express understanding that a road is to be forever kept open between said land and the railroad land adjoining throughout its extent. It is also further stipulated that in case of a failure of Bethel College to maintain a good school at Guthrie on said

land of the grade and character outlined in contract referred to as entered into March 14, 1892, the board of trustees of Bethel College are to reconvey said land to the board of trustees of the Guthrie school, to be sacredly used by them for the purpose for which it is hereby deeded.

"Made and entered into this 9th day of April, 1892.

"(Signed) John F. Taylor."

The building was erected upon the land thus conveyed. For three years Bethel College attempted to conduct a school as provided by the terms of the deed. It failed. Bethel College thereafter conveyed the property to certain trustees. After years of faithful effort, they also failed. This action was instituted by A. F. Rogers, Robert Lester and Frank Walton, as the trustees for the "Guthrie Training School," and A. F. Rogers, Robert Lester, and Frank Walton, and A. F. Rogers, D. B. Smith, Wm. M. Ware, T. S. Mimms, and R. Y. Johnson, suing for themselves and as trustees and a committee for the citizens of the town of Guthrie, upon ex parte petition, for the purpose of obtaining the direction and advice of the court as to the disposition to be made of the property. After describing the failure on the part of Bethel College to maintain a school of the kind and character defined in the conveyance, the petitioners allege that they have tried and failed. Upon this point the petition reads as follows: "That at all times since the said three named trustees have held said property, and have made continued and faithful efforts to maintain thereon such a school as was contemplated by the aforesaid deeds and contract, but all their said efforts have been a failure. It is not feasible or possible to maintain a school thereon and with the tuition receipts arising therefrom, without other financial aid, and

which has never been provided, and which it is not possible to provide. Many different teachers have been secured and placed in charge of said school, and and every possible effort has, by said trustees and by the citizens of Guthrie, been made to operate and maintain thereon such a school as was provided for originally. That for several years last past they have not been able to get any teachers at all to take charge of said school and conduct a school such as was contemplated, and they will never again be able to do so. The free school is patronized almost exclusively and their school is utterly unable to exist. The people of the town and vicinity will no longer contribute to the operation or maintenance of the said school, and the same is a failure. The buildings and grounds are out of repair, and the plaintiffs have no means with which to repair them or keep them in such condition, and have no means of procuring such necessary means, and unless something is done the improvements thereon will become greatly damaged and lessened in value. That it will be entirely useless for them to hold said property any longer for the purposes for which it was originally intended.

The petition further states that it is proposed to establish a graded school in the town of Guthrie, to be maintained by taxation, in addition to the funds provided by the State of Kentucky for its support, and the building in question would make an admirable graded school if it could be secured for that purpose, and ''to thus establish and maintain a graded school therein and thereon would nearer than anything else fulfill the original project of the promoters of said enterprise.'' Plaintiffs then state that they doubt their power to sell said property and pass a good and sufficient title thereto; that it is on their hands,

and they do not know what to do with it; that they would be much pleased to carry out the original plan, but such is impossible, and the only thing they can do is to sell it and distribute the proceeds as the court may direct; that for this reason they come to the chancellor and pray for his advice and guidance in the performance of their duties in the premises. They then asked for a sale of the property and that the proceeds, after payment of the expense of said sale, be adjudged to those properly entitled thereto.

Thereafter, the appellants, Ross Taylor, John Taylor, and others, intervened in the action and filed their petition, asking that it be taken as an answer and cross-petition against the plaintiffs. They allege that John F. Taylor, the grantor in the deed to the property in question, had died leaving a last will and testament. By the provisions of said will his estate was devised to the intervening petitioners, the appellants herein. They alleged that John F. Taylor was much interested in the movement to establish a training school at Guthrie, to be under the control and direction of the Baptist Church; that with that end in view he donated the property in question; that Bethel College had attempted to maintain said school for some years, but thereafter conveyed the property upon which the same was located to the petitioners, A. F. Rogers, Robert Lester, and Frank Walton, as trustees of Bethel Training School, of Guthrie, Todd county, Ky., and thereafter surrendered all claim to said property. They further alleged that the present trustees have utterly failed to conduct a school at that point, and that the building and grounds are being permitted to decay and go to waste; that the trustees have no right to sell said property, or convey it for any other purpose than that referred to in the deed

from Taylor; that the object and purpose for which said Taylor gave the 20 acres of ground has wholly failed; that by reason of the failure on the part of the petitioners, to maintain and establish said school as provided in the contract and deed, said property has been forfeited to the heirs and legatees of John F. Taylor. The petition concludes with a prayer that the property be declared forfeited and that it be turned over to them.

Thereupon the plaintiffs below filed a demurrer to this petition and answer. The demurrer was sustained, and the petition and answer dismissed. From that order the intervening petitioners prosecute this appeal.

Appellees earnestly contend that, even under the limited application of the cy pres doctrine in this State, the trustees have the right to convey this property for the purposes of the graded public school. For the purpose of arriving at the intention of the donors of the property, it will be necessary to consider the terms both of the contract and the deed. It is manifest from the provisions of these instruments that the school contemplated by the donors was of a character entirely different from the schools provided for by our public school law. Among the differences that may be noted are: In the mode of government of the school; in the curriculum or course of study, it being provided that it should be extensive enough to permit graduates to enter the sophomore class of the colleges of that vicinity; in the method of selecting teachers; in the endowment provided for; in that Bethel Association should be made a field within which to secure this endowment; in that 10 per cent of the tuition fees and the endowment fund should be used to maintain the building and equipment; and in

that tuition should be charged each pupil attending the school. These differences make it perfectly plain that it was not the intention of the donors that the requirements of the training school sought to be established should be complied with by the maintenance of an ordinary public school. We do not think, therefore, that the trustees would be authorized, voluntarily and without consideration, to convey the property in question to the trustees of the graded school for the purpose of having a graded school conducted therein. The deed provides that, in case of a failure of Bethel College to maintain a good school at Guthrie on said land of the grade and character outlined in the contract entered into March 14, 1892, the board of trustees of Bethel College are to reconvey the land to the board of trustees of the Guthrie school, "to be sacredly used by them for the purposes for which it is hereby deeded." This language makes it certain that the grantor in that deed conveyed the land in trust for the purposes expressed in the deed, and for no other purposes. As it is admitted that the school is a failure and can no longer be conducted, it follows that the trust itself has failed. That being the case, what are the rights of the donors?

The erection of the training school in question was a joint enterprise. The land conveyed by Taylor was but a small part of the donations made for that purpose. A large and commodious building was erected upon the land, and we may gather from the contract that a considerable sum of money was pledged by others for that purpose. So far as the record shows, the land given and all the sums contributed were mere donations. The parties contributing did so for a common object. They had no other purpose in view, and were moved by no other consideration, than the

erection and maintenance of the training school sought to be established. Under these circumstances it would be manifestly unjust and inequitable to hold that the entire property, including the land donated by Taylor and the sums of money donated by others and used in the construction of the building on the land, should revert to appellants herein, as the heirs and devisees of Taylor. As the trust has failed, we conclude that the present trustees hold the property in question in trust for the use and benefit of appellants and all other donors. The property may, therefore, be sold in this action by making all the donors, or their heirs, parties, or, if they be numerous, by permitting some to sue or defend for all. The interest of the appellants in the proceeds will be that portion thereof that the value of the land at the time of its donation bears to all the sums contributed, including the value of the land. The interest of the other donors in the proceeds will be in the proportion that the sums contributed by them bear to all the sums contributed, including the value of he land.

For the reasons given, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.